STATE ex rel. CITY OF VIRGINIA v. COUNTY BOARD OF
ST. LOUIS COUNTY and Others.[1]

December 26, 1913.

Nos. 18,227, 18,237—(20, 21).

**Classification of cities by population.**
    1. Section 36, article 4, of the Constitution of Minnesota, permits the
classification of cities for legislative purposes into four classes, on a basis
of population. The legislature, by R. L. 1905, § 746, divided the cities of
the state for legislative purposes into four classes, as permitted by the Con-
stitution. It is within the constitutional power of the legislature to provide
that, for the purpose of classification of cities, population shall be determined
according to the state census alone.

**Same — power of legislature.**
    2. The constitutional right of the legislature to pass a law fixing a test
by which population is to be determined, carries with it the right to change
the test, and this right is not taken away or suspended by the fact that its
exercise may result in shifting some city from one class into another.

**Same.**
    3. The legislature has no power to adopt a means of determining popula-
tion which is arbitrary and designed merely as an evasion of the Constitu-
tion; but we cannot say that the statute adopted in this case, making the
state census alone the test of population, whereas under the previous law
resort was had to the latest census, state or Federal, was wholly arbitrary,
evasive or without reason.

Upon the relation of the city of Virginia the district court for St.
Louis county issued its alternative writ of mandamus, directing the
members of the county board of St. Louis county to order an election
as provided by Laws 1909, c. 137, for the determination of the annex-
ation to the city of Virginia of certain territory described in a certain
petition for annexation on file in the office of the county auditor. The
respondents appeared individually and as the county board and
moved to quash the writ, for the reason that neither the petition nor

[1] Reported in 144 N. W. 756.

the writ stated facts showing that relator was entitled to a writ of mandamus. The Hobart Iron Co. filed its complaint in intervention and the Oliver Iron Mining Co. and other companies filed their complaint in intervention. From an order, Dibell, J., denying relator's motion to quash the writ, defendants and the interveners appealed. Reversed.

*Charles E. Adams,* for defendants.

*Washburn, Bailey & Mitchell, Frank B. Adams* and *George W. Morgan,* for interveners.

*Daniel D. Morgan* and *Fryberger, Fulton & Spear,* for petitioners.

HALLAM, J.

Certain residents of the city of Virginia and of territory adjacent thereto, acting under the provisions of chapter 137, p. 148, Laws 1909 (G. S. 1913, §§ 1651–1663), petitioned the county board of St. Louis county to call an election to vote upon the question of annexation of such adjacent territory to the city. As to the subsequent proceedings, it is only necessary to say that the county board denied the petition, on the ground that the act of 1909, on which it was based, applies only to cities of the third class, that is, cities having a population of from 10,000 to 20,000, and that Virginia is not in that class, but in the fourth class, which is composed of cities having a population of not more than 10,000. The city commenced this proceeding in mandamus to compel the county board to grant the petition. The county board, and certain taxpayers who had intervened, moved to quash the writ. The court denied the motion, and defendant board and the interveners appeal.

The question whether Virginia was in the third or fourth class is the only question in the case that we find it necessary to consider.

The facts are, that, by the state census of 1905, the population of Virginia was 6,056; by the Federal census of 1910 it was 10,473. The question is: By what test is population for purposes of this classification to be determined? If the state census governs, then Virginia is in the fourth class, and the county board was right If the Federal census is taken into account, then it is in the third class.

1. The classification of cities on a basis of population is authorized by section 36, art. 4 of the Constitution, which provides:

"The legislature may provide general laws relating to affairs of cities, the application of which may be limited to cities of over fifty thousand inhabitants, or to cities of fifty and not less than twenty thousand inhabitants, or to cities of twenty and not less than ten thousand inhabitants, or to cities of ten thousand inhabitants or less, which shall apply equally to all such cities of either class."

The Constitution does not provide the test for determining the number of "inhabitants" of a city. Pursuant to this constitutional provision, the legislature passed R. L. 1905, § 746 (G. S. 1913, § 1339) which provides:

"Cities are hereby divided, for legislative purposes, into classes as follows: First class. Those having more than fifty thousand inhabitants. Second class. Those having twenty thousand, and not more than fifty thousand, inhabitants. Third class. Those having more than ten thousand, and not more than twenty thousand, inhabitants. Fourth class. Those having not more than ten thousand inhabitants."

Then comes chapter 73, p. 89, Laws 1911 (G. S. 1913, § 1340) which provides:

"That for the purpose of determining the classification of the several cities of this state, the population of every such city shall be ascertained and determined according to the last census taken under and pursuant to the laws and authority of the state of Minnesota, and every such state census shall govern and determine the population of each such city in this state for the purpose of determining to which class such city belongs."

These constitutional and statutory provisions form a complete system, and result in placing Virginia in the fourth class. There would be no question about it were it not for the fact that a former law, R. L. 1905, § 5514, subd. 12, contained the provision that "the word 'population' and the word 'inhabitants,' when used in reference to population, shall mean that shown by the last preceding census, state or United States, unless otherwise expressly provided." Un-

der this provision Virginia had entered the third class before chapter 73, p. 89, Laws 1911, was passed.

Respondent city does not claim any vested right to remain in the third class, but it contends that the act of 1911 is unconstitutional and void; that the act violates three clauses of the constitutional provision above quoted:—The clause providing for general laws, the clause providing that laws shall apply equally to all such cities of either class, and the clause that the legislature shall provide laws applying to those four classes thus fixed by the number of inhabitants.  It contends that this act of 1911 was arbitrary, that it was passed for the purpose of evading and circumventing the constitutional prohibition of special legislation, and for the arbitrary purpose of retaining in the second class the city of Winona, whose population, as shown by the Federal census, had dropped from 20,334 to 18,583.

On these grounds we are asked to set aside, as unconstitutional and void, chapter 73, p. 89, Laws 1911.  We are of the opinion that the act of 1911 must stand.  The setting aside of an act of the legislature is no light matter.  All argument based on the unwisdom of the legislation is apart from the issue.  We cannot set aside laws because we may think them unwise.  Their wisdom is for the legislature to determine.  Nor can we set aside an act because it was induced by improper motives.  This court cannot sit in review in such matters.  The question presented to us for review is not one of legislative wisdom, but solely one of legislative power.  We are of the opinion that the passage of this statute was within the legislative power.  Every possible presumption is in favor of the validity of the statute.  "It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favour of its validity, until its violation of the Constitution is proved beyond all reasonable doubt."  Washington, J., in Ogden v. Saunders, 12 Wheat. (U. S.) 213, 270, 6 L. ed. 606.

Years ago this state, by constitutional amendment, prohibited special legislation.  Section 33, art. 4, Constitution of Minnesota. But the constitutional prohibition of special legislation did not deprive legislatures of power to classify districts of the state for pur-

poses of legislation, if the basis of the classification is germane to the purpose of the law. It was early held that population may be a basis of classification, if germane to the purpose of the law. It often proved difficult to determine whether or not population was germane to the purpose of the law, and section 36, art. 4, of the Constitution of Minnesota was adopted to enable the legislature to make population a basis of classification, although there might not be any natural relation between the subject-matter of the proposed law and the number of people in the classified cities, and although previous to the amendment such basis would have been held not germane to the purpose of the proposed law. Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623.

In applying section 36, art. 4, of the Constitution, there must be some rule or method by which, or a tribunal in which, the fact of population is to be ascertained and determined. The Constitution is silent on the subject. It is within the power of the legislature to prescribe some reasonable test. No method or test can be exact. It is settled in this state that a statute classifying cities on a basis of population at the time of the last preceding state census establishes a proper test, is not a special law, and is valid. State v. District Court of Ramsey County, 84 Minn. 377, 87 N. W. 942.

2. The fact that, under the law in operation before chapter 73, p. 89, Laws 1911, was enacted, Virginia had already passed into the third class, and that this act operated to place it in the fourth class, does not render the act unconstitutional, so long as the act is general in its nature and applies equally to all cities that are in like situation. The power to fix a test by which population is to be determined, carries with it the power to change the test. It will not do for this court to say that the method of determining population existing before the act of 1911 was passed, was the only just one. That was for the legislature to determine. The legislature has now determined that in its judgment resort to both Federal and state census is not the proper test to apply to this class of cases. It will not do to hold that the constitutional power of the legislature to change the basis or test of determining population, is limited to changes that will be effective upon the taking of a future census. Any such rule

might bind the legislature to a basis or test that had proven manifestly unjust. The constitutional power of the legislature to pass a law fixing a test by which population is to be determined, is not taken away or suspended by the fact that its exercise may result in immediatcly shifting some city from one class into another. The Constitution does not make these classes. It simply permits the legislature to make them. After the legislature has made classes within the constitutional limitations, it may wipe them out again if it sees fit. The fact that a city is within a certain class, simply makes a certain set of general laws applicable to it. A city has no constitutional or vested right to any particular set of regulatory laws. The legislature can change or repeal them. It may do so either by acting directly upon the laws themselves or by changing the test of classification by the adoption of any other test which it might have adopted in the first instance.

3. It is true the legislature cannot use a means of determining population which is arbitrary and designed as a mere evasion of the Constitution. Nichols v. Walter, 37 Minn. 264, 271, 33 N. W. 80.0. But we cannot say that this legislation was wholly arbitrary, evasive and without reason. There are some arguments in favor of the adoption of the single standard for determination of population. In certain communities where population changes but little there is likelihood that, owing to the different methods pursued in the taking of state and Federal census, a city might shift back and forth from one class to the other without real change in population in point of fact. The legislature, in adopting the state census as the sole test, adopted a method which this court had already said was a test within their power to adopt. State v. District Court of Ramsey County, supra. We hold that in adopting this test, and making it applicable at once, the legislature was within its constitutional powers.

It is worthy of note that this same city of Virginia very recently contended before this court for the validity of the very statute which it now attacks. Backus v. City of Virginia, 123 Minn. 48, 142 N. W. 1042. This of course concluded no one as to the proper construction of general statutes of the state, but it is significant in view

of the fact that the validity of this statute, passed nearly three years ago, has not been elsewhere challenged.

Order reversed.

HOLT, J. (dissenting).

I dissent. I see nothing unconstitutional in the act, but am of the opinion that it should be construed to apply only to a state census in the future. Classification is based on a count of the inhabitants. The cities of this state increase in population; a decrease is the exception. When a city has come into a class under a provision of law based on a count of its inhabitants, it ought not be placed in a different class by a mere rule of evidence adopting some previous count or census which every one knows does not approximate the true population. By the last Federal census Mankato, St. Cloud and Virginia came into the same class. Their executive and legislative officers from January 1, 1911, until the passage of the act, March 30, 1911, had to adapt themselves to the laws governing cities of the third class. By this decision, Mankato, the smallest of the three, retains her class, while St. Cloud and Virginia drop back into the fourth class. It seems to me a construction which brings about such a result is not reasonable.